JOSEPH LEITER *vs.* LOUIS LYONS.

PROVIDENCE—MARCH 24, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Replevin. Surety on Writ.*

A surety given by a surety company under the provisions of Gen. Laws cap. 186, § 1, on a bond in an action of replevin, takes the place of two sureties on such a bond formerly required.
Distinguishing *Whitford* v. *Goodwin*, 13 R. I. 145.

(2) *Verdicts. Issues. New Trial.*

Where the pleadings involve several issues, each party has the right to have the jury pass upon all such issues, and a failure of the jury to do so will justify the court in setting aside the verdict and granting a new trial.

(3) *Replevin. Verdicts. Issues.*

In an action of replevin the pleas were (1) title in a third party and (2) *non cepit.* The court charged the jury that their verdict would depend upon the question of title in the plaintiff, and that if the property was under the control of defendant it was technically detained by him, although he did not know it :—

*Held*, error, as it was the right of defendant to have the jury pass upon the question whether he was liable for the taking and detention of the property in the absence of any demand therefor, before the service of the writ. If he was not thus liable plaintiff was not entitled to recover against him, although the jury found that the title to the property was in the plaintiff.

REPLEVIN.    Heard on petition of defendant for new trial. New trial granted conditionally.

TILLINGHAST, J.    This is an action of replevin, and is brought to recover possession of a rotary motor of the alleged value of $2,500, which motor the plaintiff alleges belongs to him.

The defendant filed the following pleas, namely : (1) *non cepit ;* (2) *non detinet ;* (3) that he did not attach the property in question in manner and form as alleged in the declaration ; (4) that he did not take, detain, or attach the property in question, as alleged in the declaration, at the time when the taking, etc., is supposed to be ; and (5) that the property in the goods replevied was in one Edward C. Warren and not in the plaintiff.

The plaintiff joined issue in each of said pleas.

Upon the trial of the case the jury returned the following verdict : " The jury find that the property in the goods and chattels in the plaintiff's writ and declaration mentioned, at the time of the taking thereof, was in him, said plaintiff, and not in Edward C. Warren, in manner and form as the plaintiff has in his writ and declaration complained."

The case is now before us on the defendant's petition for a new trial on the grounds that the verdict is against the evidence ; that the verdict is defective ; and that certain rulings of the trial court, which will hereinafter be particularly considered, were erroneous.

The action in question arose out of, or in consequence of, an agreement which was made between said Edward C. Warren, of the one part, and Joseph Leiter and L. Z. Leiter of the other part, which agreement was as follows :

" This agreement between E. C. Warren, of Chicago, Illinois, and L. Z. Leiter and Joseph Leiter, of the same place,

is predicated upon the following : Warren is the owner of certain allowed claims in the Patent Office, upon which a patent can be obtained between now and some day in February, 1900, for a design and improvements upon a rotary engine designated as application 697,658. He is desirous of constructing and testing a mechanism of full working size and of making a practical demonstration, and to this end agrees with the aforementioned Joseph Leiter, and he will transfer to a company to be formed by said Leiter, a full and complete detail of said patents when issued. In this company each of the parties hereto shall receive one-half of the stock. L. Z. Leiter and Joseph Leiter, on their part, agree that they will furnish the said Warren the sum of $2,000 with which to build at the works of the International Power Company, at Providence, a complete and full size working mechanism in order to establish the availability of the device. Out of the sum said Warren is to receive $100 per month for salary and living expenses. If at the end of the demonstration the practicability of the device is established, said Leiters agree to use their best endeavors to make arrangements to manufacture on the most advantageous terms suitable to both. If, however, at the termination of a full and sufficient demonstration, said Leiters shall not care to become interested, they have a right, by abandoning any interest given them by this agreement, to withdraw, upon the surrender of this contract, and upon the payment of any outside accounts, not to exceed the sum stipulated. L. Z. Leiter, by Joseph Leiter, Joseph Leiter, E. C. Warren. Chicago, November 15, 1900."

In pursuance of this agreement said Warren proceeded to build the motor in question at the works of said Power Company, the Leiters furnishing the money for the same. The work went on until June 8, 1900, at which time Joseph Leiter expressed himself as being satisfied with the practicability of the device. The question then arose as to where the future work should be done and the machines manufactured. Leiter wished the work continued at said Power Company, but Warren wished it to be done elsewhere. A misunderstanding

thus arose between them, and the next morning—that is, on June 9, 1900—the machine was removed by Warren, without the knowledge of the plaintiff, to the dwelling-house of the defendant on Cranston street, in the city of Providence. Joseph Leiter, for the purpose of getting possession of the motor, sued out this writ of replevin, and the motor was taken, under the authority thereof, from the cellar of the defendant's house.

The first exception relied on is to the action of the trial court in overruling the defendant's motion to dismiss the action because the officer charged with the service of the writ did not, before serving the same, take from the plaintiff, or some one in his behalf, a bond to the defendant with sufficient sureties in double the value of the goods and chattels specified, as required by statute.

It is true that the provision contained in Gen. Laws R. I. cap. 272, § 3, relating to "sufficient sureties" on the bond required to be given to the officer as a condition precedent to the serving of any such writ, was construed by this court, in *Whitford* v. *Goodwin*, 13 R. I. 145, to require two sureties instead of one. But since that statute was first enacted a general law has been passed by which it is provided that surety companies with proper capital may act as surety on all bonds required by law. The statute referred to is that contained in Gen. Laws R. I. cap. 186, § 1, which reads as follows : "Any surety company which has a paid-up capital of $250,000 and doing only a surety business in this state, and has complied with all the requirements of law regulating the admission of such companies to transact business in this state, may, upon production of evidence of solvency and credit, satisfactory to the judge, head of department, or other officer authorized to approve such bond, be accepted as surety upon the bond of any person or corporation required by the laws of this state to execute a bond ; and if such surety company shall furnish satisfactory evidence of its ability to provide all the surety required by law, no additional surety may be exacted, but other surety may, in the discretion of the official authorized to approve such bond, be re-

quired ; and such surety may be released from its liability on the same terms and conditions as are by law prescribed for the release of individuals ; *it being the true intent and meaning of this chapter to enable corporations created for that purpose, to become the surety on bonds required by law*, subject to all the rights and liabilities of private parties."

We think the language of this statute is clearly broad enough to warrant the court in holding that a surety given by such a company on a bond in an action of replevin takes the place of two sureties on such a bond, as formerly required.

It is not disputed that the American Surety Company of New York, which became surety on the bond in question, satisfies the requirements of the statute as to solvency and credit, and also that it has complied with the requirements of law regulating the admission of surety companies to transact business in this State. Moreover, it is not claimed that the bond in question is not amply sufficient to protect the defendant in case a judgment should be rendered in his favor. And that it was satisfactory to the officer who served the writ is to be implied from the fact that he accepted it.

A similar construction to that which we have thus put upon said statute relating to surety companies was adopted in New York under statutes very similar to our own. See *Hurd* v. *Hannibal R'y Co.*, 33 Hun. 109.

In support of the defendant's contention that the same construction should be put upon the provisions of said section 3 of chapter 272, with regard to sureties on a replevin bond, as was put thereon by this court in *Whitford* v. *Goodwin, supra*, he relies largely on the fact that since the action in the present case was begun the General Assembly has amended said section 3 by expressly providing that a surety company may now be accepted by the officer charged with the service of a replevin writ in place of the two sureties previously required. Pub. Laws R. I. cap. 815, § 1.

While we concede that there is force in this argument, yet we do not feel warranted in holding that it should prevail over the plain meaning of the broad and comprehensive language contained in said chapter 186. It was probably an

oversight, on the part of the commissioners of revision, that said section 3 of chapter 272 was not amended in the last revision so as to conform to the provisions of chapter 186, above quoted, regarding surety on bonds.    And the fact that the General Assembly has recently made such an amendment may properly be taken, we think, as showing that their attention has since been called to the omission, or error, and that they have therefore rectified it so as to make it perfectly clear what their intention was in the passage of said chapter 186.

But whether our impression regarding this matter is correct or not, we are of the opinion that since the passage of said chapter 186 a surety company may properly be accepted as sole surety on a replevin bond.    The defendant's first exception is therefore overruled.

(2)    The second exception taken was to that part of the charge of the court relating to the defendant's liability, even if he did not know that the motor in question was in his possession or under his control.    To be more specific, the exception, as we understand it, was to that part of the charge which reads as follows :

"Now, as far as Mr. Lyons is concerned, it is contended, and the evidence is, that he did not take the motor in question, but that it was put in his cellar.    If it was under his control it was technically detained by him, although he did not know it.    And the suit would then be properly brought, provided that Joseph Leiter had an interest in this motor which entitled him to the possession of it as against Lyons. If this agreement had not been abandoned, he had such an interest ;  and it is for you to determine, under the circumstances, whether or not this agreement had been abandoned. Upon that will depend your verdict.    If the title was in Mr. Warren, then the defendant would be entitled to your verdict.    If this agreement had been abandoned, then the title was in Mr. Warren.    If it had not been abandoned, then the title was not in Mr. Warren, but he would not have the right to take it away from Mr. Leiter, nor would Mr. Leiter have the right to take it away from Mr. Warren.    Therefore, your

determination of this case will be dependent .entirely upon whether you find Leiter had abandoned this contract. If he had, your verdict will be for the defendant. If he had not, your verdict will be for the plaintiff."

The defendant's contention is that this instruction was erroneous because the verdict of the jury did not depend solely upon whether or not the agreement had been abandoned; that the finding on that fact was material only, as it applied to the plea of property; that the jury, after finding in favor of the plaintiff on that issue, might still find in favor of the defendant on the other issues; and that to preclude the jury, by instruction, from the possibility of so finding, when the other issues were properly before them, was error.

We think this contention is substantially correct. It is a well-settled rule of law that both parties to an action are entitled to a finding by the jury upon all the issues properly submitted to them; and there is probably no form of action where more exactness is required in the verdict than in replevin. "In other actions," says Mr. Wells on replevin, " the issues are usually few and simple, while in replevin they may be numerous and sometimes complex. The verdict, therefore, requires the most careful attention. . . . And while the court is authorized, and will, in all cases when it is necessary, correct mere formal mistakes in the verdict so as to make it correspond with the true finding of the jury and the form required by law, yet it cannot correct a verdict so as to change in any way the intention of the jury."

The same author also says that: "The verdict must be responsive to all the issues presented by the pleadings. Each party has a right to submit such material issues by proper pleading, as he shall think necessary for the protection of his interests, and has the right to have the jury pass upon them. And a failure of the jury to do so will justify the court in setting aside the verdict and granting a new trial."

In *Patterson* v. *United States*, 2 Wheat. 225, the rule is laid down as follows: "A verdict is bad if it varies from the issue in a substantial manner, or if it find only a part of that which is in issue. The reason of the rule is obvious; it

results from the nature and the end of the pleading. Whether the jury find a general or a special verdict, it is their duty to decide the very point in issue ; and although the court in which the cause is tried may give form to a general finding, so as to make it harmonize with the issue, yet if it appears to that court or to the Appellate Court that the finding is different from the issue, or is confined to a part only of the matter in issue, no judgment can be rendered upon the verdict."

In *Boynton* v. *Page*, 13 Wend. 425, it was held that where, besides the plea of *non cepit* in an action of replevin, the defendant pleads property in a third person and prays a return, the jury must pass upon all the issues ; and where in such case it appeared from the record that the jury had passed only upon the plea of *non cepit*, finding a verdict for the plaintiff, and had omitted to pass upon the plea of property, the judgment below must be reversed. See also *Bemus* v. *Beekman*, 3 Wend. 667 ; *Hamilton* v. *Colt*, 14 R. I. p. 213 ; Cobbey on Replevin, §§ 432–3 ; *Richardson* v. *Reed*, 4 Gray, 441 ; Am. & Eng. Ency. Law, vol. 20, 1st ed. 1058–61.

(3)   Evidence was offered in the case at bar that the defendant never had the motor in question in his possession or under his control, and that he had no knowledge of the fact that it was in his house at the time when the writ was served. Also, that he was not at his house when the motor was brought there, or when it was taken away by virtue of the writ in this case (which taking away, it appears, took place on the same day that it was brought there), and that he never authorized Warren, who had it carried there, or any one else, to either put it or store it in his house. His possession, therefore, at most, was only constructive, and it was clearly his right to have the jury pass upon the question whether, under the circumstances, he was liable for the taking and detention of said motor, as charged in the writ and declaration, in the absence of any demand therefor, before the service of the writ upon him. If he was not thus liable, the plaintiff was not entitled to recover against him, even though the jury found, as well they might under the evidence, that the title to said motor was in the plaintiff.

As what we have said in connection with defendant's second exception practically covers the third ground of his petition for a new trial, namely, that the verdict is defective in that the jury only found upon one of the issues involved, there is no occasion for a separate consideration of that ground.

While, however, we think that part of the charge excepted to was erroneous, and also that the verdict was defective, still, as the main question involved in the trial was that of title in said motor, together with the right of possession thereof ; and as the evidence fully sustains the finding of the jury upon that issue ; and also in view of the further fact that the defendant makes no claim either to the motor or to the possession thereof, we see no occasion to require the plaintiff to again prove that part of his case. The only issue, therefore, which the defendant is entitled to have tried is that which is raised by his pleas of *non cepit*, the technical and wholly unnecessary pleas of *non detinet*, did not attach, etc., being wholly covered by the plea of *non cepit*.

Unless the plaintiff, therefore, shall within ten days from the filing of this opinion submit to a judgment for the defendant for his costs on said plea of *non cepit*, the defendant's petition for a new trial will be granted, the trial to be limited to the issue raised by said plea of *non cepit*.

The case is remitted to the Common Pleas Division for further proceedings in accordance with this opinion.

*Comstock & Gardner*, for plaintiff.

*Doran & Flanagan*, for defendant.