## Farmer v. Rhoads

*Lawrence E. Grant*, for plaintiff.
*James N. Clymer*, for defendant.

SMITH, *J.*, September 18, 1986 — This case comes before the court on several sets of preliminary objections. We sustain the objections and grant plaintiffs leave to amend the complaint in accordance with the following.

Plaintiffs Donna R. Farmer, administratrix of the estate of Jason Allen Farmer, deceased, and Donna R'. Farmer and Floyd A. Farmer, in their own right, have commenced this action against 17 specifically named and three fictitiously identified defendants by filing a complaint on May 12, 1986. On or about May 15, 1984, Donna Farmer gave birth to twin children by way of a caesarean section performed at Lancaster Osteopathic Hospital. According to plaintiffs' complaint, plaintiffs' decedent was discharged from the hospital on May 20, 1984, and died on May 22, 1984. This medical-malpractice action purports to assert wrongful death and survival actions together with a claim of negligent infliction of emotional distress. Each count of plaintiffs' complaint alleges acts of negligence directed at the 20 named defendants together as one. Due to the similarity of the preliminary objections raised by defendants and in the interest of judicial economy, we will address the objections collectively.

Defendants allege that the complaint fails to state the claim specifically as required by Pa.R.C.P. 1019. They argue that there are no allegations as to what part each defendant played and that various allegations are merely boilerplate, and request that these averments be stricken or that plaintiff be required to file more specific pleadings. Pennsylvania is a fact-pleading state. Pa.R.C.P. 1019(a);. Alpha Tau Omega Fraternity v. University of Pennsylvania, 318 Pa. Super. 293, 464 A.2d 1349 (1983). As the court stated in Baker v. Rangos, 229 Pa. Super. 333, 349, 324 A.2d 495, 505 (1974):

."A complaint . . . must do more than give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests . . . It should formulate the issues by fully summarizing the material facts. Material facts are ultimate facts, i.e., those facts essential to support the claim. Evidence from which such facts may be inferred not only need not but should not be alleged."

Pursuant to this requirement, a general averment of "negligence" or that defendant acted in a "reckless, careless and negligent manner" is insufficient as failing to summarize the material facts, but instead pleading mere conclusions. 2A Anderson, Pennsylvania Civil Practice §1019.24. Plaintiffs in the case at bar make very broad, general averments of negligence. For example, in paragraph (a.a.) of their complaint, plaintiffs allege: "Being otherwise negligent, careless and reckless under the circumstances. Such acts or omissions, constituting carelessness, negligence and recklessness as may be ascertained by discovery procedures . . ." The Supreme Court of Pennsylvania has recently attached considerable significance to such innocuous boilerplate language.

In Connor v. Allegheny General Hospital, 501 Pa. 306, 461 A.2d 600 (1983), plaintiff underwent a barium enema. The barium solution leaked into the abdominal cavity so that subsequent surgery was necessary to remove the barium. In the original complaint in Connor, plaintiff alleged that defendant was negligent in performing the enema procedure. Plaintiff's complaint also contained a boilerplate provision that defendant was negligent by "otherwise failing to use due care and caution under the circumstances." When the case was called for trial, plaintiff filed a motion to amend, alleging an entirely new theory of negligence. The

trial court denied the motion to amend and the Superior Court affirmed, reasoning that said amendment was barred by the statute of limitations because it "sought to and new allegations of negligent acts by proceeding under a different theory." Id. at 309-310, 461 A.2d at 602.

The Supreme Court reversed, holding that plaintiff's proposed amendment did not state a new cause of action, but rather, amplified an existing cause of action. The court specifically referred to the boilerplate language in the complaint as the allegation which the proposed amendment would amplify. The Supreme Court noted:

"If defendant did not know how it otherwise fail[ed] to use due care and caution under the circumstances, it could have filed a preliminary objection in the nature of a request for more specific pleading or it could have moved to strike that portion of the complaint." Id. at 311, 461, A.2d 602 n.3.

The Connor decision has generated much attention in our neighboring counties. Link v. Roberts, 19 Centre Legal J. 24 (1984), involved a medical-malpractice action wherein defendant objected to averments substantially similar to those in the case at bar. The court in Link held:

"To avoid the issue that arose in Connor, this court must grant defendant's motion to strike with regard to those allegations in plaintiff's complaint that refer to defendant's acts which were otherwise negligent. To hold otherwise would require the defendants to prepare to defend against every possible cause of action that might fall within the ambit of the language otherwise failed to use due care. Clearly this is an impossible burden upon defendants." Id. at 25.

In a similar malpractice action, the court in Hake v. Ashton, 69 Lancaster L.R. 395 (1985), applied

the Connor decision and held that several paragraphs of plaintiff's complaint were so general as to fail to provide defendant with information sufficient to enable them to prepare their defense and in view of the possible prejudice to defendants if the general averments were permitted to stand, granted defendants' motion for more specific pleading.[1]

The averments in the complaint at bar are equally vague. It would be unjust to require defendants in this case to prepare and defend against every possible cause of action that might fall within the ambit of failing to exercise proper skill under the circumstances. Furthermore, plaintiffs have lumped together 20 defendants who range from a midwife to a hospital to a John Doe all of whom allegedly treated plaintiff and plaintiffs' decedent at various stages of plaintiff's pregnancy and decedent's short life. The averments do not notify each defendant of the particular negligence with which he is being charged.

Moreover, as was brought out during oral argument, it appears that several defendants may have been improperly joined in this action. For example, the midwife, Ms. Rhoades, apparently only treated plaintiff during the first trimester of her pregnancy. When Ms. Rhoades learned that plaintiff was carrying twins, she withdrew from plaintiff's treatment, as the pregnancy was considered at that point to be one of increased risk. A similarly tenuous connection to the case involves defendants, Dr. Stratchko and Dr. Kosakoski, who were to administer a "well-baby" post-natal check up to plaintiffs' twins. However, plaintiffs' decedent died before these two defendants ever treated the babies.

---

1. See also Richardson v. Bundy, Franklin County, A.D. 1984-231 (1986); Broechal v. Hawn, Dauphin County, no. 3183 (1984); Rayert v. Graboyes, Lycoming County, 15-00634 (1986).

The court in Mikula v. Harrisburg Polyclinic Hospital, 58 D.&C.2d 125 (1972), addressed this specific issue and held:

"There does appear to be justification for defendants' protest that legally sufficient pleading requires that the acts of negligence be delineated against the various defendants, particularly with respect to the corporate defendant, Harrisburg Polyclinic Hospital. As stated above, the averred negligence is set forth in one paragraph and is simply charged to 'defendants.' Paragraph 11 is of little help in this regard because it simply states that the incidents were caused by the joint and several negligence of the defendants herein. While no specific rule of pleading appears to require separate paragraphs for each defendant, it would seem that in a situation of this type involving, as it does, individual defendants and corporate defendants and considering the looseness of the averments of negligence which, although legally sufficient, hardly constitute the most refined pleading, each defendant should be apprised of the negligence charged to him.

Then, too, it must be remembered that in a malpractice action the professional skill of individuals who have devoted years to training, acquiring a reputation and developing a practice, are called into question and certainly more care should be exacted in allegations against these persons than in the more common vehicular situation." Id., p. 130-131.[2]

---

2. See Brauw v. Weaver, 68 York 13, 15 (1954):
"We think that a physician charged with negligence and unskillfulness in the practice of his profession is entitled to be advised of the specific acts of commission or omission which constitutes the negligence and unskillfulness complained of, so that plaintiff's proof may be confined to such acts, and so that he may reasonably prepare for his defense."

Although we do not wish to impose an unduly heavy burden upon plaintiffs, we believe that defendants are entitled to be notified with a greater degree of specificity and particularity of the charges against each of them. We therefore grant defendants' motion for more specific pleading.

In their preliminary objections, defendants demur to plaintiffs' claims for (1) loss of their child's consortium (2) decedent's loss of life's pleasures and (3) negligent infliction of emotional distress. It is well settled that a preliminary objection in the nature of a demurrer is not to be sustained and the complaint dismissed unless the law makes it clear that no recovery is possible. Cianfrani v. Commonwealth State, 505 Pa. 294, 479 A.2d 468 (1984).

At oral argument, plaintiffs agreed to withdraw their claims for (1) loss of a child's consortium, (2) loss of life's pleasures, (3) negligent infliction of emotional distress and (4) informed consent. Plaintiffs asked that these claims be dismissed without prejudice in the event that the state of the law of Pennsylvania changes. We decline to recognize this conditional dismissal but believe that a brief discussion of each claim is warranted at this point.

## I. LOSS OF A CHILD'S CONSORTIUM

While the narrow issue at bar is whether a parent may recover for the lost affections and company of a minor child, the broader question, that of expanding the traditional right to recover for loss of consortium outside of the marital relationship, must also be addressed. Traditionally, "consortium" has been defined as the "conjugal fellowship of husband and wife and the right of each to the company, society,

cooperation, affection and aid of the other."[3] In the seminal case of Quinn v. Pittsburgh, 243 Pa. 521, 90 A. 353 (1914), the Supreme Court of Pennsylvania held that "the right to recover for loss of companionship is confined to cases where a husband sues for injuries to his wife. The law does not recognize loss of companionship as an element of damage in any other relationship." Id. at 525, 90 A. at 355.

Recently, however, the law of damages as it pertains to loss of consortium has been undergoing examination and revision in other jurisdictions. In English v. Fairfield Township, 25 Lycoming 104 (1983), the issue before the court was substantially similar to that in the case at bar. Defendant filed preliminary objections in the nature of a demurrer and sought to strike all portions of the complaint which claimed "consortium, loss of company, friendship, or similar non-pecuniary damages" for the wrongful death of his minor child. The en banc court sustained its demurrer and held:

"In that the Pennsylvania Supreme Court has refused to allow recovery by a parent for loss of consortium, it is not within the prerogatives of this court to allow such damages. However, the court finds no reason for a distinction to exist between the recovery of consortium for the death of a spouse and the recovery of consortium for the death of a child. It is difficult to perceive that the lost comfort, society and companionship of a child is any less valuable than that of a spouse. Perhaps it is time that the appellate courts of this state re-examine the holding in Quinn, supra, and allow recovery of consortium

---

3. Black's Law Dictionary p. 280 (5th ed. 1979).

for the loss of a child; but since Quinn, supra, continues to state the law in Pennsylvania, the paragraphs of the complaint seeking consortium damages will be stricken." Id at 106-107. Thus, it appears that although the theory is currently under scrutiny, the state of the law in Pennsylvania continues to be that a parent may not recover damages for loss of consortium of a minor child.

## II. LOSS OF LIFE'S PLEASURES

In paragraph 59 of plaintiffs' complaint, they allege that plaintiff-administratrix of their decedent's estate "claims damages [inter alia] for . . . his loss of enjoyment of his life and life's pleasures." The rule is well established in Pennsylvania, however, that compensation for the loss of life's amenities is recoverable only if the victim survives the accident giving rise to the cause of action. Any other rule would be contrary to the compensatory objective of awarding damages to tort victims. Willinger v. Mercy Catholic Medical Center, 482 Pa. 441, 393 A.2d 1188 (1978). The Supreme Court went on to explain the basis for its decision in Willinger:

"[T]o a large extent it has been the plaintiff's consciousness of his or her inability to enjoy life that we have compensated under the rubric of 'loss of life's pleasures.' Unlike one who is permanently injured, one who dies as a result of injuries is not condemned to watch life's amenities pass by. Unless we are to equate loss of life's pleasures with loss of life itself, we must view it as something that is compensable only for a living plaintiff who has suffered from that loss." Thus, plaintiffs in this case may not properly assert a claim for decedent's loss of life's pleasures.

## III. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In paragraph 64 of their complaint, plaintiffs also claim negligent infliction of emotional distress. The right of a third party to recover for emotional distress resulting from a negligent injury to another is very limited under Pennsylvania law. It is well settled that in order for a plaintiff to state a cause of action for negligent infliction of emotional distress:

"(1) Plaintiff must be located at or near the scene of the occurrence.

(2) Plaintiff must suffer severe mental distress as a result of contemporaneously observing the occurrence and

(3) Plaintiff must be closely related to the injured party." Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979).[4] However, even under Sinn, recovery has not been allowed for emotional distress alone. In order to have a cognizable cause of action for negligent infliction of emotional distress, a plaintiff must allege actual harm or other compensable damage. Justice v. Booth Maternity Center, 345 Pa. Super. 529, 498 A.2d 950 (1985).[5] Accordingly, a parent's emotional pain and suffering caused by her child's negligent injury is not recoverable unless the distress was accompanied by or the result of a physical injury to the parent. Amadio v. Levin, 509 Pa. 199, 501 A.2d 1085 (1985).

---

4. See also Yandrich v. Radic, 495 Pa. 243, 433 A.2d 459 (1981); Hoffner v. Hodge, 47 Pa. Commw. 277, 407 A.2d 940 (1979).

5. Restatement (Second) of Torts, §436A (1977) also requires that emotional distress be accompanied by bodily harm in order for there to be recovery.

## IV. INFORMED CONSENT

Plaintiffs further allege that there was a lack of in-' formed consent in this case. The doctrine of informed consent, introduced into this Commonwealth by the Supreme Court's decision in Gray v. Grunnagle, 423 Pa. 144, 223 A.2d 663 (1966), holds that a physician and patient have an agreement concerning the scope and nature of the patient's care and that the doctor has no right to come in contact with the patient's body except within the terms of the agreement. Therefore, if the doctor treats an individual without the patient's consent, he is committing a technical assault or battery.

The basis for informed consent was recently reaffirmed in Boyer v. Smith, 345 Pa. Super. 66, 497 A.2d 646 (1985), in which the Superior Court limited recovery to cases involving surgical and operative procedures.

"To now expand the doctrine's current applicability to cases involving the administration of therapeutic drugs would be to radically depart from, and indeed obliterate, the foundation upon which the Gray decision stands." Id. at 72, 497 A.2d 649. Thus, plaintiffs may not allege lack of informed consent pertaining to the administration of medication and should amend the complaint on this point to bring it in line with Boyer.

Based upon the foregoing, we hereby

## ORDER

And now, this September 18, 1986, after careful consideration of defendants' preliminary objections and plaintiffs' answer thereto, the said preliminary objections are sustained. Plaintiffs are given leave to amend the complaint within 30 days of the date of this order.